UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIAL LIFE NETWORK, INC., <br><br>　　　　　　　　　　Plaintiff, <br><br>v. <br><br>LGH INVESTMENTS, LLC AND LUCAS HOPPEL, <br><br>　　　　　　　　　　Defendants. | Case No.: 3:21-cv-00767-L-MDD <br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** <br><br>**[ECF No. 42]** |

　　　Before the Court is Defendants LGH Investments, LLC ("LGH") and Lucas Hoppel's ("Hoppel") (collectively, "Defendants") motion to dismiss all of Plaintiff Social Life Network, Inc's ("Plaintiff") claims.[1]  (ECF No. 42.)   The Court issued an order dismissing all of Plaintiff's claims from their first amended complaint.  (ECF No. 57.)  Plaintiff appealed, and the Ninth Circuit affirmed in part and reversed in part, and overturned this Court's holding that Plaintiff was categorically exempt from California's usury laws.  *See Social Life Network, Inc. v. LGH Invs., LLC*, 2023 WL 3641791 (9th Cir. May 25, 2023).  The Ninth Circuit remanded to this court to determine the sole question

---

[1] All claims against previous Defendant J.H. Darbie and Co. were dismissed in the Court's previous Order.  (ECF No. 57.)

1

of whether Plaintiff had stated a claim that the loan in dispute was usurious.  This Court ordered supplemental briefing on this question.  (ECF Nos. 69, 72, 73.)  The Court has jurisdiction to decide the present matters pursuant to 28 U.S.C. § 1332.  The Court decides the matters on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1(d.1).  For the reasons stated below, the motion to dismiss is denied.

## I.  BACKGROUND

Plaintiff is a technology company that licenses software. (ECF No. 35 at 6.)  Its shares are publicly traded on the over-the-counter (OTC) markets. (*Id*.)  In April 2019, Plaintiff needed money to continue its business operations and marketing. (*Id*. at 9.)  Plaintiff hired Defendant J.H. Darbie & Co. ("Darbie") to connect them with potential lenders.  (*Id*.)

Darbie arranged a financing transaction between Plaintiff and Defendant LGH that was executed on April 11, 2019.  (*Id*.)  Under the agreement, LGH lent $100,000 to Plaintiff in exchange for: (1) a convertible note for $110,000 plus 7% interest, payable in seven months, with the note allowing LGH to elect to receive payment in stock at a price of $0.15 instead of receiving cash at the time of maturity; (2) 150,000 shares of Plaintiff's restricted common stock, and; (3) a warrant for 412,500 shares of Plaintiff's stock at a strike price of $0.20 for an aggregate exercise amount of $82,500.  (*Id*. at 14-15.)  The warrant also contained an anti-dilution or "most favored nations" clause, which stated that if Plaintiff issued stock to other parties at a lower price than LGH's strike price, the strike price for LGH would be lowered to the lowest offered price and the number of shares would increase such that the aggregate exercise amount would remain $82,500. (ECF No. 35-4 at 5-6.)  At the time of the transaction, Plaintiff's stock was trading at $0.145 per share.  (ECF No. 35 at 15.)

On November 11, 2019, at the date of maturity, Plaintiff paid back the full $117,700 that was due on the convertible note in cash.  (*Id*.)  Later, from December 7, 2020 to April 7, 2021, LGH began a series of transactions exercising the warrant.  (*Id*. at

18.) Due to the anti-dilution provisions of the warrant, LGH exercised the warrant at a strike price of $0.0001, ultimately buying hundreds of millions of shares.

Plaintiff then brought a variety of claims under federal and state law, seeking damages and to have the transaction declared void. The sole remaining claim is a usury claim under Cal. Civ. Code § 1916-2 and Cal. Const. art. XV, § 1.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Accordingly, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III.   DISCUSSION

The usury analysis requires the Court to answer two questions. First, did Plaintiff adequately plead that the loan was usurious. Second, does the statute of limitations extinguish any potential claims. Each of these questions is taken in turn.

### a. Whether Loan Is Usurious

#### i. Legal Standard – California Law of Usury

California's law regarding excessive interest rates is set forth in the Usury Law, an uncodified ballot initiative first adopted in 1918. *See* Cal. Civ. Code §§ 1916-1 *et seq*. The Usury Law provides for forfeiture of usurious interest and provides for the civil recovery of treble interest payments under certain circumstances. *Id*. §§ 1916-2, 1916-3. The maximum legal interest rate is now set forth in Article XV of the California Constitution, which provides that parties may contract for a rate of interest up to the greater of ten percent per year or five percent per year over the discount rate of the Federal Reserve Bank of San Francisco. Cal. Const. Art. XV, § 1.

Usury contains four elements: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (Cal. 1994). An agreement containing a usurious interest rate renders the interest provisions of a note void. *Epstein v. Frank*, 177 Cal. Rptr. 831, 837 (Cal. Ct. App. 1981). Voiding of the interest provisions, however, "do[es] not affect the right of the payee to recover the principal amount of the note when due. The inclusion of a usurious interest provision, therefore, results, in effect, in a note payable at maturity without interest." *Id*.

"The word 'interest' as used in the usury law includes any bonus, commission, or any other form of compensation paid to the lender for the use of the money borrowed, but it does not include expense items for investigating, appraising, inspecting and otherwise servicing the loan." *Cambridge Dev. Co. v. U.S. Financial*, 90 Cal. Rptr. 333, 335 (Cal. Ct. App. 1970). Interest is measured as ascertainable market value at the time the loan is made. *Sandell, Inc. v. Bailey*, 28 Cal. Rptr. 413, 421 (Cal. Dist. Ct. App. 1963).

#### ii. Analysis

It is undisputed by the parties that the transaction in question was a loan. LGH loaned Plaintiff $100,000 dollars in exchange for (1) a convertible note for $110,000 plus

7% interest, payable in seven months, with the note allowing LGH to elect to receive payment in stock at a price of $0.15 instead of receiving cash at the time of maturity; (2) 150,000 shares of Plaintiff's restricted common stock, and; (3) a warrant for 412,500 shares of Plaintiff's stock at a strike price of $0.20 for an aggregate exercise amount of $82,500.  (ECF 35 at 14-15.)

The convertible note obligated Plaintiff to pay back Defendant $110,000 dollars (the $100,000 loaned amount plus a $10,000 dollar charge that was an "original issue discount") plus seven percent interest over the seven month period.  (*Id*. at 15)  The interest amount was not annualized.  (*Id*.)  Plaintiff's total obligation on the note was therefore $117,700, which they timely paid.  (*Id*.)

Regardless of what a charge is labelled, under the usury law, interest "includes any bonus, commission, or any other form of compensation paid to the lender for the use of the money borrowed." *Cambridge Dev. Co.*, 90 Cal. Rptr. at 335.  Therefore, in addition to the stated 7% interest rate, the $10,000 dollar "original issue discount" is considered interest.  For the convertible note alone, therefore, the annualized interest rate equals 29.54%.[2]

Defendant argues that because the note was convertible, and because of the extra risk they faced, they were allowed to charge a higher rate than the 10% that is set forth in the California Constitution.[3] (ECF No. 69 at 6)  This argument fails on a number of grounds.

First, LGH themselves held the option to convert the note and receive common stock instead of cash at a set strike price.  (ECF No. 35 at 15)  Since LGH could, but were not obligated, to convert the note to receive stock instead of cash, they were at no greater risk making the loan than if the repayment only called for payment in cash. If anything,

---

[2] A 7% interest rate over 7 months is equal to 12.16% annualized. And the $10,000 dollar extra charge is an additional 17.38% annualized, equaling a total of 29.54%. (*See* ECF No. 72 at 5.)
[3] The Federal Reserve "discount window" was below 5% between October 31, 2007 and May 4, 2023, making 10% the maximum interest rate allowed.  (*See id*. at 4.)

the option for LGH to be able to convert the note into stock at a fixed strike price only increased the value of consideration they received. If the stock rose above the strike price set forth in the contract, they could elect to receive stock that had an even greater value than the $117,700 they received.

Second, loaning money to small, thinly traded companies is presumably risky. As a general principle a lender is "not prohibited from charging an extra and reasonable amount for ... risk" incurred beyond the risk of default. *See Klett v. Sec. Acceptance Co.*, 242 P.2d 873, 884 (Cal. 1952). However, Defendants have provided no legal authority to support their premise that lending money to a publicly traded business is so risky to entitle it to an interest rate of *at least* 29.54% (this rate only includes the value of the note).

The parties dispute the ascertainable market value of the warrant and the restricted stock shares at the time the loan was made (or if they had any ascertainable value at all). *See Sandell, Inc*, 28 Cal. Rptr. at 421. The Court need not resolve this issue at this point as the convertible note alone is sufficient to support a claim for usury. Any ascertainable market value for these other two pieces of consideration LGH received will only serve to increase the usurious rate of the loan.

### b. Statute of Limitations

Two statutes of limitations are relevant here. A one-year statute of limitations applies to affirmative actions for treble damages. *See* Cal. Civ. Code § 1916-3; *see also Handi Inv. Co. v. Mobil Oil Co.*, 653 F.2d 391, 393 (9th Cir. 1981). The "statute of limitations for affirmative actions to collect usurious interest payments is two years from the date of the usurious interest payment." *Naoom v. Secured Assets Income Funds*, 2006 WL 8455409, at *9 (S.D. Cal. Oct. 16, 2006) (citing *Stock v. Meek*, 35 Cal. 2d 809, 816 (1950)).

It is uncontested that Plaintiff paid $117,700 dollars to satisfy the note on November 11, 2019, or within the two-year period from the filing of this action on April 19, 2021. This amount included usurious interest, as discussed above. Therefore,

Plaintiff has stated a claim to collect at least some of the usurious interest payments.[4] *See Stock*, 35 Cal. 2d at 817 (when interest is paid before and after the statute of limitations period, Plaintiff can collect on the interest within the statute of limitations).

## IV.  CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:  November 29, 2023

_____
Hon. M. James Lorenz
United States District Judge

---

[4]  The restricted stock shares and the warrant were conveyed on April 11, 2019, outside of the statute of limitations for collecting usurious interest payments.  (*See* ECF No. 69 at 9.)  Plaintiff and Defendants disagree on if the warrant is principal or interest, and if it is interest, if the operative date is the date it was conveyed or the dates that Defendants exercised the warrant.  As the loan was usurious based on the note alone, the Court does not reach these issues at this time.