

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SOCIAL LIFE NETWORK, INC.,
Plaintiff,

v.

LGH INVESTMENTS, LLC,
Defendant.

Case No.: 3:21-cv-00767-L-MDD

**ORDER:**
**(1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**(2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**[ECF Nos. 82, 87]**

Before the Court is consolidated briefing on the parties' cross-motions for summary judgment. Defendant LGH Investments, LLC[1] ("LGH" or "Defendant") filed a motion for partial summary judgment of Plaintiff Social Life Network, Inc's ("Social Life Network" or "Plaintiff") claims. (ECF Nos. 82, 87, 89, 90, 91.) The Court has jurisdiction to decide the present matters pursuant to 28 U.S.C. § 1332. The Court decides the matters on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, LGH's motion for partial summary judgment is

[1] Defendant LGH Investments, LLC is the only remaining defendant as all claims against the other Defendants have been dismissed.

GRANTED and Social Life Network's motion for partial summary judgment is DENIED.

## I. BACKGROUND[2]

Social Life Network is a technology company that licenses software. (ECF No. 91 at 2 (Statement of Undisputed Material Facts).) Its shares are publicly traded on the over-the-counter (OTC) markets. (*Id*.) In April 2019, Social Life Network was in a difficult financial situation and needed money to continue its business operations and marketing. (*Id*.) Social Life Network hired J.H. Darbie & Co. ("Darbie") to connect them with potential lenders. (*Id*.)

Darbie arranged a financing transaction between Social Life Network and LGH that was executed on April 11, 2019 (the "Agreement"). (*Id*. at 2-3.) LGH drafted the Agreement. (*Id*.) Under the Agreement, LGH lent $100,000 to Social Life Network in exchange for: (1) a convertible note for $110,000 plus 7% interest, payable in seven months, with the note allowing LGH to elect to receive payment in stock at a price of $0.15 instead of receiving cash at the time of maturity (the "Convertible Note"); (2) 150,000 shares of Social Life Network's restricted common stock (the "Inducement Shares") and; (3) a warrant for 412,500 shares of Social Life Network's stock at a strike price of $0.20 for an aggregate exercise amount of $82,500, exercisable for 5-years (the "Warrant"). (*Id*. at 3.) The Warrant also contained an anti-dilution or "most favored nations" clause, which stated that if Social Life Network issued stock to other parties at a lower price than LGH's strike price, the strike price for LGH would be lowered to the lowest offered price and the number of shares would increase such that the aggregate exercise amount would remain $82,500. (*Id*. at 3-4.) At the time of the transaction, Social Life Network's stock was trading at $0.145 per share. (*Id*. at 4.) When the parties executed the Agreement, Social Life Network had around 127 million shares of common stock outstanding. (*Id*.)

---

[2] All background facts are taken from the joint statement of undisputed material facts. (ECF No. 91.)

On November 11, 2019, at the date of maturity, Social Life Network paid back the full $117,700 that was due on the Convertible Note in cash. (*Id*. at 6.) From December 7, 2020, to April 7, 2021, LGH began a series of transactions exercising the Warrant. (ECF No. 91 at 7.) Between November 14, 2019, and May 24, 2021, Social Life Network issued billions of shares to other investors at up to 99.95% discount to the LGH Warrant's strike price. (*Id*. at 6.) Due to the anti-dilution provisions of the warrant, LGH was then able to exercise the warrant at a strike price of less than $0.01 per share, ultimately buying 811,911,013 shares of Social Life Network stock. (*Id*. at 7.)

Social Life Network filed this action to void the Agreement and recover damages. The sole remaining claim is alleging usury in violation of Cal. Civ. Code § 1916-2 and Cal. Const. art. XV, § 1. Social Life Network and LGH bring cross motions for partial summary judgment on the issue whether statutes of limitations bar recovery for Social Life Network's delivery of shares to LGH under the Warrant.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party can satisfy this burden either by presenting evidence that negates an essential element of the nonmoving party's case; or by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).[3] If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party meets this initial burden, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to

---

[3] Unless otherwise noted, internal quotation marks, citations, and footnotes are omitted throughout.

interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

When cross-motions for summary judgment are filed, as is the case here, a court must "rule[] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015). In doing so, it must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment does not end a court's responsibility to determine whether disputes as to any material fact are present. *Id.*

## III. <u>DISCUSSION</u>

Unlike in most cases where a motion for summary judgment is filed, the parties here agree on most relevant facts.[4] Instead, the parties ask the Court to decide an issue of law, specifically, what is recoverable by Social Life Network within the relevant statutes of limitations for usury.

---

[4] LGH contends that Social Life Network's cross-motion for summary judgment relies on disputed facts, such as the valuation of the stock LGH acquired under the Warrant and the characterization of LGH's drafting of the Warrant. (ECF No. 89 at 21-22.) The Court finds these facts not material for its decision.

California law provides for forfeiture of usurious interest and provides for recovery of treble interest payments under certain circumstances (the "Usury Law"). *See* Cal. Civ. Code §§ 1916-1 *et seq*. The maximum legal interest rate for which the parties may contract is the greater of ten percent per year or five percent per year over the discount rate of the Federal Reserve Bank of San Francisco. Cal. Const. Art. XV, § 1.

Usury contains four elements: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (Cal. 1994). An agreement containing a usurious interest rate renders the interest provisions void. *Epstein v. Frank*, 177 Cal. Rptr. 831, 837 (Cal. Ct. App. 1981). Voiding of the interest provisions, however, "do[es] not affect the right of the payee to recover the principal amount of the note when due. The inclusion of a usurious interest provision, therefore, results, in effect, in a note payable at maturity without interest." *Id*.

"The word 'interest' as used in the usury law includes any bonus, commission, or any other form of compensation paid to the lender for the use of the money borrowed, but it does not include expense items for investigating, appraising, inspecting and otherwise servicing the loan." *Cambridge Dev. Co. v. U.S. Financial*, 11 Cal.App.3d 1025, 1029 (Cal. Ct. App. 1970). Interest is measured as ascertainable market value at the time the loan is made. *Sandell, Inc. v. Bailey*, 212 Cal.App.2d 920, 935 (1963).

Two statutes of limitations are relevant here. The "statute of limitations for affirmative actions to collect usurious interest payments is two years from the date of the usurious interest payment." *Naoom v. Secured Assets Income Funds*, 2006 WL 8455409, at *9 (S.D. Cal. Oct. 16, 2006) (citing *Stock v. Meek*, 35 Cal. 2d 809, 816 (1950)). A one-year statute of limitations applies to affirmative actions for treble damages. *See* Cal. Civ. Code § 1916-3; *see also Handi Inv. Co. v. Mobil Oil Co.*, 653 F.2d 391, 393 (9th Cir. 1981).

This Court previously found the annualized interest rate for the Convertible Note alone equals 29.54% and as such, was usurious. (ECF No. 77 at 5.) Therefore, Social Life Network can recover everything it had paid LGH in excess of the principal as usurious interest, provided such payments are interest under the Usury Law and subject to the two relevant statutes of limitations periods. Both parties agree that the transfer of the Inducement Shares was outside the statute of limitations.[5] (ECF Nos. 82-1 at 14 ("Social Life 'paid' … [] the … Restricted Shares on April 11, 2019 when the agreements were executed and the Restricted Shares … were conveyed"); 87 at 19 ("[t]he Inducement Shares were [p]aid to LGH more than two years prior to suit, and cannot be recovered as interest").)

The dispute presented for decision by the pending motions is the date the Warrant was "paid." This depends on when the value of the Warrant was transferred. *See Westman v. Dye*, 214 Cal. 28, 38 (1931) (statute of limitations period accrues when interest has been actually paid either in money, or money's equivalent). LGH argues the warrant should be viewed like the Inducement Shares. Accordingly, it claims the relevant date is April 11, 2019, when the Warrant was transferred. Social Life Network argues the relevant dates are when the Warrant was exercised and stock delivered to LGH (from December 7, 2020, to April 7, 2021). The relevant dates are shown in the timeline below.

---

[5] Additionally, as the Inducement Shares were the first payment from Social Life Network to LGH and was made before the Convertible Note was paid off, any ascertainable value of the Inducement Shares would first be applied to the principal until paid off, and only then be considered interest. *See Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1043 (2021) ("payments of usurious interest are applied to principal, even if the parties have treated them as interest.").




**Figure 1: Timeline of Key Dates in Relation to the Statutes of Limitations**

Social Life Network contends that "[a] stock purchase warrant like the one in this case is not 'money or money's equivalent,'" and therefore the "value is *actually transferred* to the holder only when it exercises the warrant." (ECF No. 87 at 19-20.) The Court disagrees. A "warrant[]" such as this one, is an investment instrument "effectively equivalent to [an] option." *Custom Chrome, Inc. v. Comm'r*, 217 F.3d 1117, 1121 (9th Cir. 2000). Social Life Network admits that a warrant or option contains value based on two metrics: "an intrinsic value and a time value." *Id*. 1125. The "intrinsic value of an option is the difference between the actual value of a share and the exercise price of the option." *Id*. The time value of an option "reflects the expectation that, prior to expiration, the price of . . . [the] stock will increase by an amount that would enable an investor to sell or exercise the option at profit." *Id*.

When Social Life Network conveyed the Warrant to LGH on April 11, 2019, that constituted the transferring of an asset as of that date that contained an intrinsic value and a time value. Even where a warrant is "out-of-the-money," meaning the fixed price at which the holder could exercise the warrant is higher than the current trading price of the stock, as was the case when the Warrant that was conveyed to LGH, "the warrants nevertheless had *some* positive value" due to the time value. *Id*. At this point, just like with stock, LGH could have sold the Warrant, or, as they did in this case, held onto it on the possibility that it might increase in value. Accordingly, Social Life Network's contention that "value is *actually transferred* to the holder only when it exercises the

warrant and obtains the stock from the company that issued the warrant," is incorrect. (ECF No. 87 at 19-20.) When Social Life Network transferred the Warrant to LGH on April 11, 2019, the Warrant was an asset with value.

California law does not compel a different understanding.[6] It does not appear that California courts have ever considered the question whether the value is transferred when a warrant is transferred or when it is exercised. Social Life Network relies on California caselaw that held that interest on a trust deed is not paid when the borrower conveys the trust deed to the lender, but when the lender executes the trust deed after the borrower has defaulted on the loan. *Penziner v. West. Am. Fin. Co.*, 10 Cal.2d 160 (1937). In *Penziner*, the trust deed was given as security in case the borrower defaulted on the loan. (*Id*.) When the borrower defaulted, the lender executed the trust deed, took possession of the property, sold it, and kept the surplus after the principal and interest had been satisfied. *Id*. at 168-69, 179. Here, unlike in *Penziner*, the Warrant was not given as collateral in the event of default, but was part of consideration along with the Convertible Note and Inducement Shares, given to entice LGH to make the loan. LGH did not have to wait for Social Life Network to default before exercising the Warrant. Therefore, unlike in *Penziner* where usurious interest was paid when the lender executed the trust deed, here, the payment was made when the Warrant was initially transferred to LGH.

While California courts have not conclusively considered the issue at hand, caselaw suggests the date when a warrant is transferred is the relevant date for the usury inquiry, rather than the date when it is exercised. In *Sandell, Inc. v. Bailey*, the court held that the value of an option is to be ascertained on the date it was transferred. 212 Cal.

---

[6] As a diversity jurisdiction case, California substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 91 (1938). "When a state's highest court has not yet ruled on an issue, we must reasonably determine the result that the highest state court would reach if it were deciding the case." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016). "In doing so, we may look to decisions from state appellate courts for guidance." *Id*. However, even in the absence of any caselaw on point, the Court is "not precluded" from determining what the state's highest court would likely rule. *Id*.

App. 2d at 935 ("The value of the stock after the date the option was given is immaterial even though it may later become valuable."). If an option or warrant is to be valued on the date when it is transferred, it logically follows that this is also when its value is deemed to be transferred from the borrower to the lender.

Accordingly, Social Life Network transferred the Warrant and the Restricted Shares to LGH on April 11, 2019. This is outside the relevant statutes of limitations. The ascertainable value of the Warrant and the Restricted Shares, if any, is applied first to the principal and then toward the interest. *See Korchemny*, 68 Cal. App. 5th at 1043. The remaining question is to what extent the November 11, 2019, payment from Social Life Network to LGH consists of principal versus interest (and accordingly, to what extent it is recoverable within the statute of limitations).[7] The parties do not present this question for decision in these pending motions. It is therefore not addressed in this Order.

## IV. CONCLUSION

For the reasons stated above, the Court finds the relevant date for statutes of limitation purposes is April 11, 2019, when the Warrant was transferred to LGH. This date falls outside either of the relevant statutes of limitations. Accordingly, the LGH's motion for partial summary judgement is GRANTED and Social Life Network's motion for partial summary judgement is DENIED.

**IT IS SO ORDERED.**

Dated: May 20, 2024

Hon. M. James Lorenz
United States District Judge

---

[7] For example, if the combined value of the Warrant and the Restricted Shares exceeds the $100,000 principal, the entirety of the November 11, 2019, payment from Social Life Network comprises of interest. As that date falls within the statute of limitations period, the amount could potentially be recoverable. If the Warrant and the Restricted shares together are valued at less than the principal, then the potentially recoverable portion of the November 11, 2019, payment would be reduced accordingly.